UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLOS SIMMONS,

       Petitioner,

                                 CASE NO. 2:09-CV-13131
v.                               JUDGE GEORGE CARAM STEEH
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

CARMEN PALMER,

       Respondent.
                         /


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      D.    *Denial of Counsel at Lineup (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      E.    *Introduction of Other Acts Evidence (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      F.    *Sentencing (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            1.      *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            2.      *Judicial Fact-Finding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.   REPORT:

A.   *Procedural History*

1.   Petitioner Carlos Simmons is a state prisoner, currently confined at the Michigan Reformatory in Ionia, Michigan.

2.   On June 13, 2006, petitioner was convicted of three counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(f); and one count of unarmed robbery, MICH. COMP. LAWS § 750.530, following a jury trial in the Wayne County Circuit Court.  On June 29, 2006, he was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10 to concurrent terms of 35-50 years' imprisonment on each of the CSC-I convictions, and to a concurrent term of 5-22½ years' imprisonment on the unarmed robbery conviction.

3.   Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.   THE TRIAL COURT ERRED IN DENYING MR. SIMMONS' MOTION TO SUPPRESS PHOTOGRAPHIC LINEUP IDENTIFICATION EVIDENCE, AS THE LINEUP WAS CONDUCTED WHILE MR. SIMMONS WAS IN CUSTODY AND IN VIOLATION OF MR. SIMMONS' RIGHT TO COUNSEL.
>
> II.  THE TRIAL COURT ERRED IN ADMITTING REFERENCES TO MR. SIMMONS' OTHER ALLEGED RAPES IN VIOLATION OF MRE 404(B).
>
> III. MR. SIMMONS WAS DENIED A FAIR TRIAL AND HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S FAILURE TO REQUEST THE APPOINTMENT OF AN EXPERT ON EYEWITNESS IDENTIFICATION.
>
> IV.  THE TRIAL COURT ERRED IN SCORING 50 POINTS FOR OV 7 BECAUSE THERE WAS NO EVIDENCE OF SADISM OR TORTURE.
>
> V.   THE TRIAL COURT VIOLATED MR. SIMMONS' RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS BY INCREASING HIS SENTENCE BASED ON FACTS THAT WERE NEVER FOUND BY A JURY BEYOND A REASONABLE DOUBT.

> VI. THE TRIAL COURT'S ORDER THAT MR. SIMMONS REIMBURSE THE COUNTY $760 IN ATTORNEY FEES MUST BE VACATED WHERE MR. SIMMONS WAS INDIGENT AND THERE WAS NO HEARING FINDING OR OTHER SHOWING THAT HE HAD THE PRESENT OR FUTURE ABILITY TO PAY SUCH ATTORNEY FEES.

The court of appeals found no merit to petitioner's claims, with the exception of his claim relating to the imposition of attorney fees. The court therefore affirmed his conviction and sentence, but remanded for a determination of petitioner's ability to pay an attorney fee. *See People v. Simmons*, No. 271675, 2007 WL 4322154 (Mich. Ct. App. Dec. 11, 2007) (per curiam).

    4.    On March 7, 2008, the trial court entered an order deleting the attorney fees from petitioner's judgment of sentence, in accordance with the court of appeals's limited remand.

    5.    Petitioner, through counsel, sought leave to appeal to the Michigan Supreme Court, raising the claims asserted in the court of appeals except for his ineffective assistance of counsel and attorney fee claims. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Simmons*, 481 Mich. 879, 748 N.W.2d 841 (2008).

    6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 10, 2009. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the Michigan Supreme Court.[1]

    7.    Respondent filed her answer on April 16, 2010. She contends that petitioner's claims are without merit.

    8.    Petitioner filed a reply to respondent's answer on May 3, 2010.

---

[1] Petitioner attached to his application his brief to the Michigan Court of Appeals. Construing the petition as raising all six claims filed in the court of appeals, respondent moved to dismiss on the grounds that the ineffective assistance and attorney fee claims were unexhausted, because they were not presented to the Michigan Supreme Court. The Court agreed, and entered an Order dismissing the case without prejudice on February 23, 2010. Petitioner thereafter filed a motion to reopen the case and amend the petition to delete the unexhausted claims, which the Court granted on March 18, 2010.

B.  *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the rape and robbery of fifteen year old Jennifer Johnson in Highland Park, on the morning of October 16, 2005. The evidence adduced at trial was accurately summarized in the prosecutor's brief on appeal:

> On the morning of October 16, 2005, fifteen-year-old Jennifer Johnson walked down Hamilton Street in Highland Park, making her way from her friend's house to the bus stop so she could go home. As Johnson went to a gas station to get change for the bus, defendant spoke to her, but she did not respond. Undaunted, defendant followed her into the gas station, then walked with her some distance to the bus stop. talking as he walked. On the way, defendant told Johnson she looked mean, and Johnson replied that she just wanted to go home. Defendant replied that he was going to catch the bus, too.
> After they arrived at the bus stop, defendant told Johnson he wanted to give her cab fare home. Defendant asked her to go with him to another gas station so he could use the ATM, but Johnson waited for him at the bus stop. Defendant went into the gas station, came out, and walked right past Johnson without acknowledging her. Johnson followed defendant as he walked, asking about the cab fare. When defendant reached an alley, he turned and hit her in the face and told her not to talk or ask questions.
> Johnson had fallen to her knees after defendant hit her, and defendant told her to unbutton her pants. Defendant then forced her to perform fellatio on him, telling her that when he said swallow, she was to swallow. After defendant forced her to perform fellatio, he told Johnson to stand up, turn and face the wall, and bend over and put her hands on the ground. Defendant then penetrated her vagina with his penis with such force that her head hit the brick wall in front of her. After defendant penetrated her vaginally, he told Johnson to turn back around and get back on her knees. He then forced her to perform fellatio on him again, telling her to swallow when he told her to and to "suck [his] juices off." Defendant ejaculated in her mouth and told her to swallow, which she did.
> Defendant then told Johnson to pull up her pants, walk to the end of the alley, and wait there until she couldn't see him anymore. Johnson waited until defendant was gone, and then went to collect her things. Her money, cell phone, and gift cards were gone. Johnson then went to the gas station, called her cousin, and told her cousin what had happened. People in the gas station who overheard her conversation called the police. Johnson, crying and distraught, spoke to police at the station, giving them a description of the defendant. Johnson then went by ambulance to Children's Hospital, where she spent fifteen to twenty minutes washing out her mouth. A rape kit was performed, but no traceable DNA was found. Johnson later helped police make a composite sketch of defendant. She viewed a photo array consisting of five pictures, but told police that the man who raped her was not in any

4

of the pictures. On February 15, 2006, Johnson was shown a photographic lineup (defendant refused to participate in a live lineup without his attorney, who could not be contacted) and identified defendant as the man who raped her.

In the meantime, defendant had been arrested and was in custody. On February 14 and 15, 2006, defendant approached two different deputy sheriffs at the jail and asked them to put him in contact with Detective Hines so he could talk. Hines came and told defendant he could not speak to him without his attorney present, but defendant persisted. After Hines again informed defendant he couldn't speak without his attorney present and warned defendant that anything he said would be used against him, defendant asked Hines to hear him out. Defendant posed a hypothetical to Hines, asking, "What if a brother wanted to confess to you about twelve rapes in Highland, and all that brother wanted was one week to say goodbye to his wife and family?" Hines responded that, hypothetically, he would do whatever he could to make it happen. Defendant then mentioned that the "brother" could also give up at least five rapes in Detroit if he got that week. Later, defendant dropped the third person and said, "All I want is a week to say goodbye to my wife and I'll give you, I'll tell you everything about all of the rapes in Highland Park and the three in Detroit." When Hines told defendant he had met with prosecutors and there was nothing that could be done, defendant told Hines that if he didn't get that deal, he would drag it out in court, have his attorney consolidate the cases, and plead out to fifteen years.

Pl.-Appellee's Br. on Appeal, in *People v. Simmons*, No. 271675 (Mich. Ct. App.), at 4-6.

C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination

5

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.  *Denial of Counsel at Lineup (Claim I)*

Petitioner first contends that he was denied his right to counsel because the police conducted a photographic lineup with the victim at which his counsel was not present. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.  *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend VI.

7

The right to counsel exists at all so-called "critical stages" of the trial process, that is, "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Ray*, 389 U.S. 128, 134 (1967). As a general matter, once criminal proceedings have begun a corporeal line-up is such a "critical stage" of the proceedings to which the right of counsel attaches. *See Gilbert v. California*, 388 U.S. 263, 272 (1967); *United States v. Wade*, 388 U.S. 218 (1967). The Sixth Amendment right to counsel attaches only at or after the initiation of criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Fellers v. United States*, 540 U.S. 519, 523 (2004); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

2. *Analysis*

Here, the Michigan Court of Appeals rejected petitioner's claim because the Sixth Amendment right to counsel had not yet attached at the time of the lineup. *See Simmons*, 2007 WL 4322154, at *1, slip op. at 1.[2] This determination was reasonable. As noted above, while a post-indictment line-up is a "critical stage" of a criminal proceeding for which a defendant has a Sixth Amendment right to counsel, *see Wade*, 388 U.S. at 236-37, the Sixth Amendment right to counsel is a trial right which does not apply to events before the initiation of formal adversary criminal proceedings. *See United States v. Ash*, 413 U.S. 300, 303 n.3 (1973). And, as noted above, the Sixth Amendment right to counsel attaches only at or after the initiation of criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Fellers*, 540 U.S. at 523; *McNeil*, 501 U.S. at 175. Here, petitioner does not dispute that formal criminal proceedings had not yet begun when the line-up was conducted. Rather, he contends that his arrest,

---

[2]The court alternatively found that any error was harmless, based on victim's in-court identification. *See id.* at *1, slip op. at 2.

and the fact that the investigation had focused on him, triggered his Sixth Amendment right. However, petitioner's arrest alone was insufficient to trigger his Sixth Amendment right to counsel. *See Von Kohl v. United States*, 242 F.3d 783, 789 (8th Cir. 2001); *cf. Moran v. Burbine*, 475 U.S. 412, 428-31 (1986) (police did not deprive defendant of Sixth Amendment right to counsel by interfering with counsel's attempt to contact arrested defendant where no formal criminal proceedings had been initiated). Because petitioner's right to counsel had yet to attach, he had no Sixth Amendment or due process right to counsel at the line-up. *See Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (plurality op.).

In addition, even if the Sixth Amendment right had attached, petitioner was not denied his right to counsel because he was subjected only to a photographic, and not a corporeal, lineup. In *Ash*, *supra*, the Court expressly distinguished between photographic and corporeal line-ups, and declined to extend the Sixth Amendment right of counsel to photographic line-ups, holding that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *Ash*, 413 U.S. at 321; *see also*, *Moore v. Illinois*, 434 U.S. 220, 227 n.3 (1977). Put simply, regardless of whether he was already in custody, "[p]etitioner had no federal constitutional right to counsel at the photo display because it was a photo display, not an in-person lineup." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000) (Gadola, J.); *see also*, *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (O'Meara, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[3]

---

[3]In his reply, petitioner asserts various reasons why the victim's identification was unreliable. Apart from his denial of counsel claim, petitioner did not raise a suggestive lineup claim in either the Michigan Court of Appeals or his habeas petition. Any such claim, however, is without merit. A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so

E.  *Introduction of Other Acts Evidence (Claim II)*

Petitioner next contends that he was denied a fair trial by the introduction of evidence that he had committed other rapes. Specifically, he challenges the introduction of Detective Hines's testimony that petitioner had admitted to having committed other rapes in an attempt to secure a deal from the prosecutor. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.  *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional

---

unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). Petitioner does not, however, point to any impermissibly suggestive lineup procedures. Rather, he contends that the victim's identification of him was inconsistent with her earlier descriptions of her assailant and with the composite sketch she assisted in creating. If there has been no impermissibly suggestive identification procedure, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990); *see also*, *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). Because petitioner has not pointed to any impermissibly suggestive identification procedures, any question as to the victim's identification went to the weight of the identification, not its admissibility. Thus, even if petitioner has properly asserted a suggestive lineup claim, such a claim is without merit.

magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2. *Analysis*

Petitioner contends that he was denied a fair trial by the introduction of evidence that he had committed other rapes. This evidence was introduced through the testimony of Detective Hines, who testified as to petitioner's attempt to obtain a deal by offering to provide information about several additional rapes petitioner had committed. As noted above, the issue here is not whether this

11

evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Here, as explained by the Michigan Court of Appeals, while the statements implicated Rule 404(b), petitioner's "statements were relevant without an intermediated inference to character." *Simmons*, 2007 WL 4322154, at *2, slip op. at 3. Rather, the statements were relevant for a proper purpose because they showed a consciousness of guilt and because, when tied with petitioner's threat to "drag this out in court," constituted an admission of guilt. *See id*. Because the evidence was relevant, petitioner was not denied a fair trial by its admission. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Sentencing (Claims III & IV)*

Finally, petitioner raises two challenges to his sentence. First, he contends that the trial court misscored Offense Variable 7 in computing his sentence under the Michigan sentencing guidelines. Second, he contends that his sentence violated his Sixth Amendment right to a jury trial because it was based on fact found by the trial judge, rather than the jury. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

    1.     *Guidelines Scoring*

Petitioner's claim that the trial court erred in scoring OV 7 is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

2. *Judicial Fact-Finding*

Petitioner also contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that

13

case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the

Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the

minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial

> discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

G.  *Recommendation Regarding Certificate of Appealability*

    1.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

*v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a

18

recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. The record establishes that adversarial proceedings had not commenced at the time of the photographic lineup, and thus petitioner's Sixth Amendment right to counsel had not yet attached. Further, the law is clear that there is no Sixth Amendment right to counsel at a photographic, as opposed to corporeal, lineup. Accordingly, the resolution of petitioner's lineup counsel claim is not reasonably debatable. Likewise, it is clear that petitioner's evidence and sentencing guidelines claims raise issues of state law not cognizable on habeas review, and thus the resolution of these claims is not reasonably debatable. Finally, the courts that have considered the issue, including the Sixth Circuit, have uniformly concluded that *Apprendi* and *Blakely* do not apply to Michigan's indeterminate sentencing scheme, and thus the resolution of this claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

H. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                          s/Paul J. Komives  
                          PAUL J. KOMIVES  
                          UNITED STATES MAGISTRATE JUDGE

Dated: 6/15/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 15, 2010.
>
>                     s/Eddrey Butts  
>                     Case Manager